UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LUBLEEJOY GRANT, | ) | No. 1:15-cv-5100 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| HER IMPORTS NY, LLC, HER IMPORTS LLC, | ) | |
| HER HOLDING, INC., and EZJR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO HER HOLDING, INC. AND EZJR, INC.'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Matthew J. Blit
Justin S. Clark
LEVINE & BLIT, PLLC
350 Fifth Avenue, Suite 4020
New York, NY 10118
Tel. (212) 967-3000
Fax (212) 967-3010
mblit@levineblit.com
jclark@levineblit.com
*Attorneys for Plaintiff*

September 2, 2016

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................... iv

I.    PRELIMINARY STATEMENT................................................... 1

II.   STATEMENT OF MATERIAL FACTS........................................ 2

    A.   Ms. Grant's Employment.................................................. 2

    B.   Agreement between EZJR and the Her Imports Companies.............. 3

        1.   Revenue and Expenses................................................ 3

        2.   Employees............................................................. 4

        3.   Operations............................................................. 4

    C.   Her Holding's Assumption of the Her Imports Companies'
        Rights and Obligations under the Agreement........................... 4

III.  ARGUMENT IN SUPPORT OF MS. GRANT'S CROSS-MOTION
      FOR SUMMARY JUDGMENT.................................................. 5

    A.   It Is Indisputable that Ms. Grant Was an Employee, and Not an
        Independent Contractor, as a Matter of Law........................... 5

    B.   It Is Indisputable that Defendants Did Not Comply with the
        Mandates of the Wage Theft Prevention Act........................... 7

    C.   It Is Indisputable that EZJR Was a Joint Employer of Ms. Grant...... 8

        1.   EZJR Was a Joint Employer of Ms. Grant............................ 8

            a.   EZJR Had Formal Control over Grant's
                Employment.................................................. 8

            b.   EZJR Had Functional Control over Grant's
                Employment.................................................. 9

    D.   It is Indisputable that EZJR Is a Substantial Continuity of the
        Her Imports Companies.................................................. 10

        1.   EZJR Had Constructive Notice of Ms. Grant's Claims.......... 11

        2.   The Her Imports Companies Cannot Provide Relief.............. 12

3.  EZJR Has Substantially Continued the Business Operations and Continues to Sell the Same Products as the Her Imports Companies Did Prior to the Agreement.................................... 12

4.  EZJR Uses the Same Store Location in Brooklyn as the Her Imports Companies................................................................ 12

5.  EZJR Uses Substantially the Same Staff under the Same Working Conditions................................................................ 12

E.  It is Indisputable that EZJR, Her Holding, and the Her Imports Companies Are a Single Integrated Employer.................................... 13

1.  Interrelation of Operations.................................................... 14

2.  Centralized Control of Labor Relations.................................. 14

3.  Common Management........................................................... 14

4.  Common Financial Control.................................................... 15

F.  It Is Indisputable that Ms. Grant Was Unlawfully Denied Regular Wages and Overtime Wages in Violation of the Labor Law by Defendants................................................................................ 15

1.  Defendants Did Not Maintain Accurate Contemporaneous Time Records for Ms. Grant.................................................... 15

2.  Ms. Grant Was Not Paid Overtime Wages.............................. 16

3.  Ms. Grant Was Denied Regular Wages by Defendants from September 2014 through Ms. Grant's Resignation, but for One $5,000.00 Payment........................................................ 17

4.  Defendants Did Not Have a Good Faith Basis that Its Conduct Complied with the Labor Law.................................. 17

5.  Ms. Grant Has Sustained Damages as a Result of Defendants' Violations of the Labor Law.................................. 18

a.  Applicable Hourly Rates for Ms. Grant........................ 18

b.  Calculation of Unpaid Overtime Wages........................ 18

i.  July 2013 through August 2013........................ 19

|  |  | ii. | September 2013 through August 2014 | 19 |
|  |  | iii. | September 2014 until October 2014 | 19 |
|  |  | iv. | October 2014 until March 2015 | 20 |
|  |  | v. | Total Unpaid Overtime Wages | 20 |
|  | c. | Calculation of Unpaid Regular Wages | | 20 |
|  |  | i. | September 2014 until October 2014 | 21 |
|  |  | ii. | October 2014 until arch 2015 | 21 |
|  |  | iii. | Total Unpaid Regular Wages | 21 |
|  | d. | Liquidated Damages | | 21 |
|  | e. | Pre-Judgment Interest, Reasonable Attorney's Fees, and Costs | | 22 |
| V. | ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT | | | 22 |
|  | A. | Alternatively, a Genuine Issue of Material Fact Exists as to Whether EZJR Can Be Held Liable for Wages and Other Damages Owed to Ms. Grant | | 22 |
|  | B. | Alternatively, a Genuine Issue of Material Fact Exists as to Whether Her Holding Can Be Held Liable for Wages and Other Damages Owed to Ms. Grant | | 23 |
| VI. | CONCLUSION | | | 23 |

## **TABLE OF AUTHORITIES**

### **Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).......................................................................... 5

*Anderson v Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946)......................................................................... 16

*Bautista v. Beyond Thai Kitchen, Inc.*,
   No. 14-cv-4335 (LGS), 2015 BL 301364 (S.D.N.Y. Sept. 17, 2015)........... 10, 11

*Brock v. Superior Care, Inc.*,
   840 F.2d 1054 (2d Cir. 1988)............................................................. 6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)......................................................................... 5

*Gayle v. Harry's Nurses Registry, Inc.*,
   594 Fed. Appx. 714 (2d Cir. 2014).................................................. 5, 6

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005)............................................................. 5

*Jemine v. Dennis*,
   901 F. Supp.2d 365 (E.D.N.Y. 2012)................................................ 16

*Juarez v. 449 Rest., Inc.*,
   29 F.Supp.3d 363 (S.D.N.Y. 2014)................................................... 13

*Kew Sing Yap v. Mooncake Foods, Inc.*,
   146 F.Supp.3d 552 (S.D.N.Y. 2015)................................................. 13

*Musikiwamba v. ESSI, Inc.*,
   760 F.2d 740 (7th Cir. 1985)........................................................... 11

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947)......................................................................... 6

*Santillan v. Henao*,
   822 F. Supp.2d 284 (E.D.N.Y. 2011)............................................ 15, 16

*Teri v. Spinelli*,
   980 F.Supp.2d 366 (E.D.N.Y. 2013)................................................ 8, 9

*Zheng v. Liberty Apparel Co.,*
    355 F.3d 61 (2d Cir. 2003)....................................................................... 9

**Statutes and Regulations**

Fed. R. Civ. Pro. 56(a)................................................................................ 5

29 C.F.R. § 791.2(a)................................................................................... 8

Labor Law 190 *et seq.*................................................................................ 17

Labor Law 195(1)....................................................................................... 7

Labor Law 195(3)....................................................................................... 7

Labor Law 195(4)....................................................................................... 15

Labor Law 196-a......................................................................................... 16

Labor Law 198(1)....................................................................................... 22

Labor Law 198(1-a)........................................................................... 17, 21, 22

Labor Law 198(1-b)..................................................................................... 7

Labor Law 198(1-d).................................................................................. 7, 8

12 N.Y.C.R.R. 142-2.2............................................................................... 16

12 N.Y.C.R.R. 142-2.6............................................................................... 15

Plaintiff, Lubleejoy Grant ("Ms. Grant" or "Plaintiff"), by and through her counsel, Levine & Blit, PLLC, hereby respectfully submits Ms. Grant's Memorandum of Law in Support of Her Cross-Motion for Summary Judgment against Her Holding Inc. ("Her Holding") and EZJR Inc. ("EZJR"), Her Imports NY, LLC, and Her Imports LLC (Her Imports NY, LLC and Her Imports LLC shall be referred to collectively as "Her Imports Companies") (collectively, all defendants in this action shall be referred to as "Defendants"); and in Opposition to Her Holding and EZJR's Motion for Summary Judgment.

## I.   PRELIMINARY STATEMENT

On September 1, 2015, Ms. Grant commenced the instant civil action bringing causes of action for unpaid minimum wages pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("Labor Law"), unpaid overtime wages pursuant to the FLSA and the Labor Law, and violations of Labor Law 195(1) and 195(3) (the Wage Theft Prevention Act) against Defendants.  Her Holding and EZJR have moved for summary judgment on the issue of whether these two entities can be held liable as an employer of Ms. Grant.  In response, Ms. Grant opposes their Motion and has made a Cross-Motion for Summary Judgment on the following issues: (1) whether Ms. Grant was an employee or independent contractor; (2) whether Defendants complied with the Wage Theft Prevention Act; (3) whether EZJR was an employer of Ms. Grant; (4) whether EZJR was a substantial continuity of the Her Imports Companies; (5) whether Her Holding was an employer of Ms. Grant; and (6) whether Defendants violated the Labor Law by failing to pay Ms. Grant overtime wages and regular wages.  For the reasons stated herein, Ms. Grant respectfully requests that this Court deny Her Holding

and EZJR's Motion for Summary Judgment in its entirety and grant Plaintiff's Cross-Motion for Summary Judgment against Defendants.

## II.    STATEMENT OF MATERIAL FACTS

### A.    Ms. Grant's Employment

Ms. Grant began working at the Her Imports store in Brooklyn, New York in about July 2013 when she was hired by Patrick Terry ("Mr. Terry"). (Plaintiff's Counter-Statement of Material Fact ("Pl. C-SMF"), ¶¶ 40-41). Her Imports NY, LLC classified Ms. Grant as an independent contractor. (Pl. C-SMF, ¶ 87). After being hired, Ms. Grant received training from Mr. Terry and was introduced by Mr. Terry to the landlord for the Her Imports store in Brooklyn. (Pl. C-SMF, ¶¶ 43, 45). The Her Imports store in Brooklyn was open to the public from 11 a.m. until 7 p.m., on Mondays through Saturdays. (Pl. C-SMF, ¶ 42). Ms. Grant was supposed to be paid on an hourly basis at a rate set by Mr. Terry. (Pl. C-SMF, ¶ 49).

Ms. Grant was responsible for setting up the Her Imports store in Brooklyn by arranging for electricity and internet to be installed in the store. (Pl. C-SMF, ¶ 44). Ms. Grant was responsible for maintaining the store, managing inventory, making sales, paying bills, promoting the store, and communicating on a daily basis with Mr. Terry. (Pl. C-SMF, ¶ 46). Ms. Grant opened a Her Imports store in New Jersey and trained the employee of that store. (Pl. C-SMF, ¶ 50). Mr. Terry provided Ms. Grant with promotional flyers and business cards. (Pl. C-SMF, ¶ 47). Mr. Terry alone could approve sales promotions or discounts. (Pl. C-SMF, ¶ 48). Ms. Grant was provided with a cellular telephone for her work. (Pl. C-SMF, ¶ 51). As a condition of her employment, Ms. Grant signed a non-compete agreement. (Pl. C-SMF, ¶ 52). Ms. Grant did not and

could not hold any other employment while working for the Her Imports stores in Brooklyn due to her long hours. (Pl. C-SMF, ¶ 53).

Defendants did not maintain contemporaneous time and attendance records for Ms. Grant. (Pl. C-SMF, ¶¶ 55-58). Defendants did not provide the notice required by the Wage Theft Prevention Act, Labor Law 195(1), or the wage statements required by the Wage Theft Prevention Act, Labor Law 195(3), to Ms. Grant at any time. (Pl. C-SMF, ¶¶ 79-86). Ms. Grant resigned in March 2015. (Pl. C-SMF, ¶ 54).

**B.      Agreement between EZJR and the Her Imports Companies**

On October 1, 2014, EZJR and the Her Imports Companies entered into the Marketing and Selling Agreement (the "Agreement"). (Defendants' Statement of Material Fact ("Def. SMF"), ¶ 12; Pl. C-SMF, ¶ 12). After EZJR and the Her Imports Companies entered into the Agreement, EZJR essentially owned the Her Imports stores in the United States and the Her Imports Companies ceased to operate. (Pl. C-SMF, ¶¶ 59, 63).

**1.      Revenue and Expenses**

After EZJR and the Her Imports Companies entered into the Agreement, all revenue generated by Her Imports stores in the United States was remitted to EZJR and EZJR collects and remits sales tax to the appropriate tax authorities. (Pl. C-SMF, ¶¶ 70-71). After EZJR and the Her Imports Companies entered into the Agreement, EZJR paid for all utilities costs and rents incurred by Her Imports stores in the United States. (Pl. C-SMF, ¶¶ 72-73).

3

### 2.    Employees

After EZJR and the Her Imports Companies entered into the Agreement, EZJR assumed responsibility for the employees of the Her Imports stores in the United States, including their compensation and maintenance of time and payroll records. (Pl. C-SMF, ¶¶ 60-61, 75-76). After EZJR and the Her Imports Companies entered into the Agreement, EZJR was responsible for payment of Ms. Grant's wages, and Ms. Grant was informed that EZJR was responsible for such payment. (Pl. C-SMF, ¶¶ 77-78).

### 3.    Operations

After EZJR and the Her Imports Companies entered into the Agreement, EZJR was responsible for the operation of the Her Imports stores in the United States, including where stores will open and which stores will close. (Pl. C-SMF, ¶¶ 62, 68). After EZJR and the Her Imports Companies entered into the Agreement, a Her Imports store in the United States could not open to sell hair extension products without EZJR's approval. (Pl. C-SMF, ¶ 69). After EZJR and the Her Imports Companies entered into the Agreement, EZJR owned all inventory and was responsible for purchasing all new inventory. (Pl. C-SMF, ¶ 64). EZJR continues to use the same source for products as the Her Imports Companies and continues to sell the same products as the Her Imports Companies did prior to the Agreement. (Pl. C-SMF, ¶ 97). After EZJR and the Her Imports Companies entered into the Agreement, EZJR was responsible for all marketing of Her Imports products in the United States. (Pl. C-SMF, ¶ 74).

### C.    Her Holding's Assumption of the Her Imports Companies' Rights and Obligations under the Agreement

On or about March 7, 2015, Her Holding and Her Imports Companies entered into an Assignment and Assumption Agreement (the "Assignment"). (Def. SMF, ¶ 33; Pl. C-

4

SMF, ¶ 33).  Her Holding was created to enter into an agreement with EZJR so that it could collect royalties in place of the Her Imports Companies.  (Pl. C-SMF, ¶ 65).  Her Holding's only source of revenue is royalties from EZJR.  (Pl. C-SMF, ¶ 66).  Her Holding uses the royalties to pay for business expenses incurred by Mr. Cronister and promote the Her Imports brand.  (Pl. C-SMF, ¶ 67).

## III.   ARGUMENT IN SUPPORT OF MS. GRANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  A fact is 'material' if it "might affect the outcome of the suit under the governing law" and it is a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial...." *Anderson*, 477 U.S. at 248.

### A.   It Is Indisputable that Ms. Grant Was an Employee, and Not an Independent Contractor, as a Matter of Law

"Whether a worker is treated as an employee or an independent contractor under FLSA is determined not by contractual formalism but by 'economic realities.'" *Gayle v. Harry's Nurses Registry, Inc.*, 594 Fed. Appx. 714, 717 (2d Cir. 2014) (citing to

5

*Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947)). "Our analysis of the relationship turns on the economic-reality test, which weighs (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Gayle*, 595 Fed. Appx. at 717 (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988)). "No one of these factors is dispositive; rather, the test is based on a totality of the circumstances." *Brock*, 840 F.2d at 1059.

As to the first factor, the managers of the defendants exercised complete control over Ms. Grant as evidenced by the fact that Mr. Terry trained Ms. Grant on how to perform her duties and directed when, where and how Ms. Grant would perform her duties. (Pl. C-SMF, ¶¶ 42-43, 46). As to the second factor, as an hourly employee, Ms. Grant had no opportunity for profit or loss, and did not have an investment in the business. (Pl. C-SMF, ¶ 49). As to the fourth factor, Ms. Grant's tenure as an employee of the defendants lasted over 18 months, she did not have any other source of income during this time period, she was subject to a non-compete agreement, and she was provided with a company cellular telephone. Pl. C-SMF, ¶¶ 40-41, 51-54). And as to the fifth factor, Ms. Grant was an integral part of the defendants' business due to her responsibilities in the Her Imports store in Brooklyn and involvement in opening and training the staff at the Her Imports store in New Jersey. (Pl. C-SMF¶¶ 44-51). For these reasons, Ms. Grant respectfully requests that this Court find that Ms. Grant was employee of Defendants as a matter of law.

6

**B.**     **It Is Indisputable that Defendants Did Not Comply with the Mandates of the Wage Theft Prevention Act**

As demonstrated in Section III(A) above, Ms. Grant was an employee and not an independent contractor. As such, the Wage Theft Prevention Act mandates that statutory notices and wage statements be provided to Ms. Grant by her employer or employers. Labor Law 195(1) and 195(3). None of the defendants provided such documents to Ms. Grant. (Pl. C-SMF, ¶¶ 55-58, 79-86).

"If any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section one hundred ninety-five of this article [Labor Law 195(1)], he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." Labor Law 198(1-b). Based upon the indisputable facts, summary judgment on this claim should be granted to Ms. Grant and she should be awarded $5,000.00 in statutory penalties plus reasonable attorney's fees and costs against all defendants found to be an employer. *See* Labor Law 195(1), 198(1-b), (Pl. C-SMF, ¶¶ 40-54, 79-82).

"If any employee is not provided a statement or statements as required by subdivision three of section one hundred ninety-five of this article [Labor Law 195(3)], he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." Labor Law 198(1-d). Based upon the indisputable facts, summary judgment on this claim should be granted to Ms. Grant and she should be awarded $5,000.00 in statutory penalties plus

7

reasonable attorney's fees and costs against all defendants found to be an employer. *See* Labor Law 195(1), 198(1-d), (Pl. C-SMF, ¶¶ 40-54, 83-86).

**C.**    **It Is Indisputable that EZJR Was a Joint Employer of Ms. Grant**

**1.**    **EZJR Was a Joint Employer of Ms. Grant**

"An individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case, 'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'" *Teri v. Spinelli*, 980 F.Supp.2d 366, 373 (E.D.N.Y. 2013) (quoting 29 C.F.R. § 791.2(a)). "The determination of whether multiple defendants are a plaintiff's joint employers is based on the totality of the circumstances in light of the economic realities of the employer-employee relationship." *Teri*, 980 F.Supp.2d at 374. There are two factor tests that can be applied in the joint employer analysis: (1) the formal control test, or (2) the functional control test. *Id.* In the instant action, EZJR had formal and functional control over Ms. Grant's employment.

**a.**    **EZJR Had Formal Control over Grant's Employment**

In the formal control test, the court evaluates four factors to "determine the economic reality of a putative employment relationship", which are "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Teri*, 980 F.Supp.2d at 374. After EZJR and the Her Imports companies entered into the Agreement, Mr. Hall primarily determined which Her Imports stores in the United States will open and which stores will close. (Pl. C-SMF, ¶ 68). Further, EZJR assumed responsibility for the

employees of the Her Imports stores in the United States and payment of their compensation. (Pl. C-SMF, ¶¶ 60-61). Moreover, EZJR had authority concerning the amount of compensation paid to individuals working at the Her Imports stores in the United States. (Pl. C-SMF, ¶ 75). Lastly, EZJR was responsible for maintaining payroll records for individuals working at the Her Imports stores in the United States. (Pl. C-SMF, ¶ 76). As such, after entering into the Agreement, EZJR had formal control over the employees working at the Her Imports stores, including Ms. Grant. Therefore, summary judgment in favor of Ms. Grant is appropriate on this issue.

### b.  EZJR Had Functional Control over Grant's Employment

In the functional control test, the court evaluates six factors to determine the economic reality of the relationship, which are:

> "(1) whether [the alleged joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [original employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to the [alleged employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [alleged joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported joint employer]." *Teri*, 980 F.Supp.2d at 374, n. 13 (quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003)).

After EZJR and the Her Imports companies entered into the Agreement, EZJR was responsible for paying all rents and purchasing all inventory for Her Imports stores located in the United States. (Pl. C-SMF, ¶¶ 64, 73). Subsequent to the Agreement, Ms. Grant's duties remained unchanged and her performance remained integral to the business. (Pl. C-SMF, ¶¶ 50-54). Further, EZJR assumed responsibility for the employees of the Her Imports stores in the United States and payment of their

9

compensation. (Pl. C-SMF, ¶¶ 60-61). Because EZJR essentially owned the Her Imports

stores in the United States and Her Imports Companies ceased to operate, Ms. Grant's

work was exclusively for EZJR. (Pl. C-SMF, ¶¶ 59, 63). Moreover, all revenue

generated by Her Imports stores in the United States is remitted to EZJR, which

demonstrates that Ms. Grant's work was primarily for EZJR's benefit. (Pl. C-SMF, ¶

70). As such, after entering into the Agreement, EZJR had functional control over the

employees working at the Her Imports stores, including Ms. Grant. Therefore, summary

judgment in favor of Ms. Grant is appropriate on this issue.

### D. It is Indisputable that EZJR Is a Substantial Continuity of the Her Imports Companies

"The substantial continuity test focuses on whether the new company has

acquired substantial assets of its predecessor and continued, without interruption or

substantial change, the predecessor's business operations." *Bautista v. Beyond Thai

Kitchen, Inc.*, No. 14-cv-4335 (LGS), 2015 BL 301364, at *6 (S.D.N.Y. Sept. 17, 2015)

(annexed to the Declaration of Matthew J. Blit as Exhibit 5). While the Court of Appeals

for the Second Circuit has not yet addressed whether the substantial continuity test

applies in the FLSA context, three other Circuit Courts and several courts in the Southern

District of New York have held that it does because it is a logical extension of existing

case law. *See id.* at *3-4. The substantial continuity test requires the examining court to

evaluate the following nine factors:

> "(1) whether the successor company had notice of the charge or pending
> lawsuit prior to acquiring the business or assets of the predecessor; (2) the
> ability of the predecessor to provide relief; (3) whether there has been a
> substantial continuity of business operations; (4) whether the new
> employer uses the same plant; (5) whether he uses the same or
> substantially the same work force; (6) whether he uses the same or
> substantially the same supervisory personnel; (7) whether the same jobs

10

exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985).

"No one factor is controlling, and it is not necessary that each factor be met to find successor liability." *Bautista*, No. 14-cv-4335 (LGS), 2015 BL 301364, at *6. "The party advocating for successor liability bears the burden of proof." *Id.*

### 1. EZJR Had Constructive Notice of Ms. Grant's Claims

EZJR had constructive notice of Ms. Grant's claims because EZJR assumed payroll responsibilities for the Her Imports Companies.  (Pl. C-SMF, ¶¶ 60-61, 75-78). During his deposition, Mr. Hall acknowledged that EZJR was aware that some individuals working at the Her Imports stores were classified as independent contractors, including Ms. Grant.  (Pl. C-SMF, ¶ 96).  Therefore, EZJR had constructive notice upon taking control that individuals, including Ms. Grant, who were working at Her Imports stores were misclassified or may be misclassified as independent contractors.

### 2. The Her Imports Companies Cannot Provide Relief

After EZJR and the Her Imports Companies entered into the Agreement, EZJR essentially owned the Her Imports stores in the United States and Her Imports Companies ceased to operate.  (Pl. C-SMF, ¶¶ 59, 63).  Further, all revenue generated by Her Imports stores in the United States was remitted to EZJR.  (Pl. C-SMF, ¶ 70).  Because the Her Imports Companies do not have any revenue and are not a going concern, they cannot provide relief to Ms. Grant.

3.    **EZJR Has Substantially Continued the Business Operations and Continues to Sell the Same Products as the Her Imports Companies Did Prior to the Agreement**

After EZJR and the Her Imports Companies entered into the Agreement, EZJR essentially owned the Her Imports stores in the United States and Her Imports Companies ceased to operate. (Pl. C-SMF, ¶¶ 59, 63). At that time, EZJR purchased all of the Her Imports Companies' inventory and was responsible for purchasing all new inventory going forward. (Pl. C-SMF, ¶ 64). Further, all revenue generated by Her Imports stores in the United States is remitted to EZJR and EZJR collects and remits sales tax to the appropriate tax authorities. (Pl. C-SMF, ¶¶ 70-71). In addition, EZJR pays for all utilities costs and rents incurred by Her Imports stores in the United States. (Pl. C-SMF, ¶¶ 72-73). Moreover, EZJR continues to use the same source for products as the Her Imports Companies and continues to sell the same products as the Her Imports Companies did prior to the Agreement. (Pl. C-SMF, ¶ 97). This factor is strongly in favor of finding that EZJR is a substantial continuity of the Her Imports Companies.

4.    **EZJR Uses the Same Store Location in Brooklyn as the Her Imports Companies**

The Her Imports store in Brooklyn where Ms. Grant worked remains in business to this day. (Pl. C-SMF, ¶ 98).

5.    **EZJR Uses Substantially the Same Staff under the Same Working Conditions**

After EZJR and the Her Imports Companies entered into the Agreement, EZJR assumed responsibility for the employees of the Her Imports stores in the United States, including their compensation and maintenance of time and payroll records. (Pl. C-SMF, ¶¶ 60-61, 75-76). Thus, rather than hiring new staff, EZJR simply assumed control and

responsibility over the Her Imports Companies employees. In addition, Mr. Cronister continues to hold a supervisory role over the Her Imports stores. (Pl. C-SMF, ¶ 99). This factor is strongly in favor of finding that EZJR is a substantial continuity of the Her Imports Companies.

For these reasons, Ms Grant respectfully requests that this Court grants her Cross-Motion for Summary Judgment finding that EZJR is a substantial continuity of the Her Imports Companies.

### E.     It is Indisputable that EZJR, Her Holding, and the Her Imports Companies Are a Single Integrated Employer

"To determine whether distinct entities operate as a single integrated enterprise, 'courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.'" *Kew Sing Yap v. Mooncake Foods, Inc.*, 146 F.Supp.3d 552, 558 (S.D.N.Y. 2015) (quoting *Juarez v. 449 Rest., Inc.*, 29 F.Supp.3d 363, 367 (S.D.N.Y. 2014)). Pursuant to the Agreement, EZJR purchased all the inventory of the Her Imports Companies and assumed responsibility for purchasing future inventory, employees and their compensation, business operations, and marketing. (Pl. C-SMF, ¶¶ 60-62, 64, 68-69, 74, 97). In addition, EZJR would be remitted all revenue produced by the Her Imports stores and was responsible for paying expenses incurred by the Her Imports stores. (Pl. C-SMF, ¶¶ 70-73). In exchange, the Her Imports Companies were to receive royalties on the revenue produced by the Her Imports stores. (Pl. C-SMF, ¶ 65). Her Holding was created to enter into an agreement with EZJR so that it could collect royalties in place of the Her Imports Companies. (Pl. C-SMF, ¶ 65). Her Holding's only source of revenue is royalties from EZJR. (Pl. C-SMF, ¶ 66). Her Holding uses the royalties to pay for

business expenses incurred by Mr. Cronister and promote the Her Imports brand, which generates sales for the Her Imports stores. (Pl. C-SMF, ¶ 67). Her Holding argues that it cannot be Ms. Grant's employer because it was created after her employment ended; however, based upon the structure of the enterprise, as detailed below, Her Holding is simply a shell corporation for EZJR to use its funds to promote the Her Imports stores to increase EZJR's revenue.

### 1.    Interrelation of Operations

The operations of Her Holding are interrelated to the operations of EZJR and the Her Imports Companies because Her Holding's purpose is to collect royalties in place of Her Imports Companies' place and use those funds to promote the Her Imports stores, which in turn produces more revenue for EZJR. (Pl. C-SMF, ¶¶ 65-67). Although separate entities in name, the Defendants were operating and continue to operate as a single enterprise.

### 2.    Centralized Control of Labor Relations

Her Holding, EZJR, and the Her Imports Companies have centralized control over labor because Mr. Cronister, President of Her Holding and General Manager of the Her Imports Companies, and Mr. Hall have control and authority over employee relations, compensation, hiring, and firing. (Pl. C-SMF, ¶¶ 61-62).

### 3.    Common Management

Her Holding, EZJR, and the Her Imports Companies have common management for the same reasons articulated above concerning centralized control of labor relations.

14

### 4.    Common Financial Control

Her Holding, EZJR, and the Her Imports Companies are under common financial control because EZJR receives and controls all the revenue produced by the Her Imports stores and pays all expenses. (Pl. C-SMF, ¶¶ 70-73). Her Holding's only source of revenue is royalties paid by EZJR, which it uses to promote sales of Her Imports products to generate more revenue for EZJR. (Pl. C-SMF, ¶¶ 66-67). As an economic reality, EZJR exercises financial control over Her Holding and the Her Imports Companies.

For these reasons, Ms. Grant respectfully requests that this Court grant summary judgment in her favor finding that EZJR, Her Holding, and the Her Imports Companies are a single integrated employer.

**F.    It Is Indisputable that Ms. Grant Was Unlawfully Denied Regular Wages and Overtime Wages in Violation of the Labor Law by Defendants**

### 1.    Defendants Did Not Maintain Accurate Contemporaneous Time Records for Ms. Grant

"New York's Labor Law is the state analogue to the federal FLSA. Although the Labor Law does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales, it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime, including the minimum wage during the relevant period." *Santillan v. Henao*, 822 F. Supp.2d 284, 293 (E.D.N.Y. 2011) (internal quotation marks omitted). The Labor Law, like the FLSA, requires that an employer maintains, among other information, the wages and hours worked by its employees. Labor Law § 195(4); 12 N.Y.C.R.R. 142-2.6. When an employer fails to keep records as required by the record keeping provisions of the FLSA, the Supreme Court has held that rather than penalize an employee for the employer's

failure to comply with its statutory duty, the court should apply a special burden shifting analysis. *Anderson v Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). The *Anderson* Court described the analysis, as follows:

> "[i]n such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 687-88.

"New York law goes one step further and requires that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan*, 822 F. Supp.2d at 294 (quoting Labor Law § 196-a); *see also Jemine v. Dennis*, 901 F. Supp.2d 365, 376 (E.D.N.Y. 2012). It is indisputable that Defendants did not maintain accurate time records for Ms. Grant. (Pl. C-SMF, ¶ 55-58). Therefore, the *Anderson* burden shifting analysis applies in resolving this Cross-Motion for Summary Judgment.

### 2.    Ms. Grant Was Not Paid Overtime Wages

Ms. Grant was an employee of Defendants from about July 2013 through March 2015. (Pl. C-SMF, ¶¶ 40-54, 59-78). "An employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate" unless an employee is exempt from overtime pay. 12 N.Y.C.R.R. 142-2.2. Ms. Grant worked in the Her Imports store approximately forty-eight hours per week. (Pl. C-SMF, ¶ 88). Ms. Grant was paid her regular hourly rate, rather than her overtime rate, for her weekly hours worked in excess of forty in the Her Imports Store. (Pl. C-SMF, ¶ 89). Ms. Grant promoted Her Imports

products at nightclubs from about 11 p.m. to 3 a.m or 4 a.m., on Wednesday through Sunday nights. (Pl. C-SMF, ¶ 91). Ms. Grant was not compensated for any work that she performed outside of the store's operating hours, such as her promotional work at night clubs. (Pl. C-SMF, ¶ 90). As such, Ms. Grant was denied the overtime premium for approximately eight hours per week and was denied overtime wages entirely for approximately twenty hours per week during the course of her employment. Therefore, Defendants should be held liable for such non-payment of overtime wages.

### 3. Ms. Grant Was Denied Regular Wages by Defendants from September 2014 through Ms. Grant's Resignation, but for One $5,000.00 Payment

Ms. Grant was an employee of Defendants from about July 2013 through March 2015. (Pl. C-SMF, ¶¶ 40-54, 59-78). Ms. Grant worked at the Her Imports store in Brooklyn from 11 a.m. until 7 p.m., on Mondays through Saturdays. (Pl. C-SMF, ¶ 42). Under the Labor Law, employers are required to pay for all regular wages earned at the regular hourly rate. *See* Labor Law 190 *et seq.* At the time Ms. Grant resigned in March 2015, she had not received any wages at all for her work for the preceding six months, but for a one time payment of $5,000.00 in early March 2015. (Pl. C-SMF, ¶ 95). As such, Ms. Grant was denied her regular wages in violation of the Labor Law, and Defendants should be held liable for such non-payment of regular wages.

### 4. Defendants Did Not Have a Good Faith Basis that Its Conduct Complied with the Labor Law

Pursuant to Labor Law § 198(1-a), "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." Defendants compensated Ms. Grant as it did because they claim

17

that she was an independent contractor. (Pl. C-SMF, ¶ 87). However, the indisputable

facts demonstrate that Ms. Grant was actually an employee. (Pl. C-SMF, ¶¶ 40-54).

Defendants exercised such a degree of control over Ms. Grant that it could not have

believed, in good faith, that it had properly classified Ms. Grant as an independent

contractor. (Pl. C-SMF, ¶¶ 40-54, 59-78). Therefore, liquidated damages are appropriate

in this action.

### 5.  Ms. Grant Has Sustained Damages as a Result of Defendants' Violations of the Labor Law

#### a.  Applicable Hourly Rates for Ms. Grant

Initially, Ms. Grant's regular hourly rate was $15.00. (Pl. C-SMF, ¶ 92).

Therefore, Ms. Grant's initial overtime rate was $22.50 per hour.  After about a month or

two, Ms. Grant's regular hourly rate was increase to $20.00. (Pl. C-SMF, ¶ 93).

Therefore, at that time, Ms. Grant's overtime rate was $30.00 per hour.  In about October

or November of 2014, Ms. Grant's regular hourly rate was decreased to $17.50. (Pl. C-

SMF, ¶ 94).  Therefore, as of October or November 2014, Ms. Grant's overtime rate was

$26.25 per hour.

#### b.  Calculation of Unpaid Overtime Wages

Ms. Grant was an employee of Defendants from about July 2013 through March

2015. (Pl. C-SMF, ¶¶ 40-54, 59-78).  Ms. Grant was denied the overtime premium for

eight of the hours she was working in the Her Imports store per week. (Pl. C-SMF, ¶¶

88-89).  She was denied all overtime wages for all performed outside of the store's

operating hours, such as her promotional work at night clubs, which was approximately

twenty hours per week. (Pl. C-SMF, ¶¶ 90-91).

### i. July 2013 through August 2013

To determine the amount of unpaid overtime premium wages during this time period, one must multiply the number of unpaid overtime premium hours by the unpaid overtime premium amount and then by the number of weeks during the time period, which in this instance is eight weeks (8 overtime hours x $7.50 x 8 weeks = $480.00). To determine the amount of unpaid overtime wages during this time period, one must multiply the number of unpaid overtime hours by the unpaid overtime rate and then by the number of weeks during the time period, which in this instance is eight weeks (20 overtime hours x $22.50 x 8 weeks = $3,600.00).

### ii. September 2013 through August 2014

To determine the amount of unpaid overtime premium wages during this time period, one must multiply the number of unpaid overtime premium hours by the unpaid overtime premium amount and then by the number of weeks during the time period, which in this instance is fifty-two weeks (8 overtime hours x $10.00 x 52 weeks = $4,160.00). To determine the amount of unpaid overtime wages during this time period, one must multiply the number of unpaid overtime hours by the unpaid overtime rate and then by the number of weeks during the time period, which in this instance is fifty-two weeks (20 overtime hours x $30.00 x 52 weeks = $31,200.00).

### iii. September 2014 until October 2014

At the time Ms. Grant resigned in March 2015, she had not received any wages at all for her work for the preceding six months, but for a one time payment of $5,000.00 in early March 2015. (Pl. C-SMF, ¶ 95). Therefore, to determine the amount of unpaid overtime wages during this time period, one must multiply the number of unpaid

overtime hours by the unpaid overtime rate and then by the number of weeks during the time period, which in this instance is four weeks (28 overtime hours x $30.00 x 4 weeks = $3,360.00).

### iv. October 2014 until March 2015

At the time Ms. Grant resigned in March 2015, she had not received any wages at all for her work for the preceding six months, but for a one time payment of $5,000.00 in early March 2015. (Pl. C-SMF, ¶ 95). Therefore, to determine the amount of unpaid overtime wages during this time period, one must multiply the number of unpaid overtime hours by the unpaid overtime rate and then by the number of weeks during the time period, which in this instance is twenty-two weeks (28 overtime hours x $26.25 x 22 weeks = $16,170.00).

### v. Total Unpaid Overtime Wages

Pursuant to the above calculations, Ms. Grant sustained $54,330.00 in unpaid overtime wages as an employee of Defendants.

### c. Calculation of Unpaid Regular Wages

Ms. Grant was an employee of Defendants from about July 2013 until March 2015. (Pl. C-SMF, ¶¶ 40-54, 59-78). Ms. Grant worked at the Her Imports store in Brooklyn from 11 a.m. until 7 p.m., on Mondays through Saturdays. (Pl. C-SMF, ¶ 42). At the time Ms. Grant resigned in March 2015, she had not received any wages at all for her work for the preceding six months, but for a one time payment of $5,000.00 in early March 2015. (Pl. C-SMF, ¶ 95).

### i.        September 2014 until October 2014

To determine the amount of unpaid regular wages that were due to Ms. Grant during this time period, one must multiply the number of regular hours worked by Ms. Grant's regular hourly rate and then by the number of weeks during the time period, which in this instance is four weeks (40 regular hours x $20.00 x 4 weeks = $3,200.00).

### ii.       October 2014 until arch 2015

To determine the amount of unpaid regular wages that were due to Ms. Grant during this time period, one must multiply the number of regular hours worked by Ms. Grant's regular hourly rate and then by the number of weeks during the time period, which in this instance is twenty-two weeks (40 regular hours x $17.50 x 22 weeks = $15,400.00).

### iii.      Total Unpaid Regular Wages

For the period of time where Ms. Grant went entirely uncompensated, her regular hourly earning should have been $18,600.00.  Ms. Grant received a one time payment of $5,000.00 in early March 2015, therefore, the total amount of regular wages owed is $13,600.00.

### d.       Liquidated Damages

As a result of the unpaid regular wages and overtime wages identified above and Defendants' lack of a good faith basis for denying these wages, Ms. Grant respectfully requests that this Court awards her with $67,930.00 in liquidated damages.  *See* Labor Law § 198(1-a).

**e.      Pre-Judgment Interest, Reasonable Attorney's Fees, and Costs**

"In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules...." Labor Law 198(1-a); *see also* Labor Law 198(1) (allowing for the recovery of costs by an aggrieved employee). Should the Court find any of the defendants liable for unpaid regular wages or overtime wages, Ms. Grant respectfully requests that prejudgment interest is awarded to her on the total amount of the underpayment at the rate set by the New York Civil Practice Law and Rules.  Further, should the Court find any of the defendants liable for unpaid regular wages or overtime wages pursuant to this Cross-Motion, Ms. Grant respectfully requests leave to file a Motion for Reasonable Attorney's Fees and Costs.

**V.      ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A.      Alternatively, a Genuine Issue of Material Fact Exists as to Whether EZJR Can Be Held Liable for Wages and Other Damages Owed to Ms. Grant**

Alternatively, for the reasons stated in Section III(C) through (E) above, a genuine issue of material fact exists as to whether EZJR can be held liable for damages arising from the claims brought by Ms. Grant in the instant civil action.  Therefore, Ms. Grant respectfully requests that this Court denies EZJR's Motion for Summary Judgment.

22

**B.     Alternatively, a Genuine Issue of Material Fact Exists as to Whether Her Holding Can Be Held Liable for Wages and Other Damages Owed to Ms. Grant**

Alternatively, for the reasons stated in Section III(E) above, a genuine issue of material fact exists as to whether Her Holding can be held liable for damages arising from the claims brought by Ms. Grant in the instant civil action. Therefore, Ms. Grant respectfully requests that this Court denies Her Holding's Motion for Summary Judgment.

**VI.     CONCLUSION**

For the reasons stated herein, Ms. Grant respectfully requests that this Court deny Her Holding and EZJR's Motion for Summary Judgment in its entirety; and grant Plaintiff's Cross-Motion for Summary Judgment against Defendants, along with any such other or further relief this Court deems just and equitable.

Respectfully submitted,

Dated: September 2, 2016
New York, NY

Matthew J. Blit
Justin S. Clark
LEVINE & BLIT, PLLC
350 Fifth Avenue, Suite 4020
New York, NY 10118
Tel. (212) 967-3000
Fax (212) 967-3010
mblit@levineblit.com
jclark@levineblit.com