## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**LUBLEEJOY GRANT**,

        Plaintiff,

        v.

**HER IMPORTS NY, LLC, HER IMPORTS LLC, HER HOLDING, INC., and EZJR, INC.,**

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Civil Action No. 1:15-cv-5100 (DLI)**

**ECF CASE**

**ORAL ARGUMENT REQUESTED**


## MEMORANDUM OF LAW:  (A) IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (B) IN REPLY TO PLAINTIFF'S OPPOSITION TO MOTION BY HER HOLDING, INC. AND EZJR FOR SUMMARY JUDGMENT

James J. DeCristofaro, Esq.
DCL Firm (DeCristofaro Law)
260 W 26th Street, Suite 7Q
New York, New York 10001
Tel.  (212) 500-1891
Fax  (917) 591-0289
Email:  james@dclfirm.com

*Attorneys for Defendants HER Holding, Inc. and EZJR, Inc.*

Date of Service:  May 4, 2017

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………........... 1

STATEMENT OF ADDITIONAL FACTS…………………………………………… 3

ARGUMENT…………………………………………………………………………… 9

POINT I: THERE ARE GENUINE ISSUES OF MATERIAL FACT PREVENTING
SUMMARY JUDGMENT THAT GRANT WAS AN EMPLOYEE, NOT AN
INDEPENDENT CONTRACTOR…………………………………………………… 9

POINT II:  EZJR IS NOT A JOINT EMPLOYER………………..……………….... 14

POINT III: EZJR IS NOT A "SUBSTANTIAL CONTINUITY" OF THE LLC……... 17

POINT IV:  GRANT CANNOT ESTABLISH THAT THE SINGLE
INTERGRATED ENTERPRISE EXCEPTION SHOULD APPLY TO HER
HOLDING AND EZJR…………………………………………………………….... 20

POINT V:  MS. GRANT'S FLSA CLAIM MUST FAIL BECAUSE SHE HAS NOT
SHOWN THAT HER HOLDING AND EZJR MEET THE SALES VOLUME
THRESHOLD……………………………………………………………………… 24

DAMAGES…………………………………………………………………………….. 24

CONCLUSION………………………………………………………………………… 25

## Table of Authorities
### Cases

Alladin v. Paramount Mgmt., LLC, 2013 WL 4526002, *5 (S.D.N.Y. Aug. 27, 2013) ............. 24

Bautista v. Beyond Thai Kitchen, Inc., No. 14 Civ. 4335 (LGS), 2015 WL 5459737, *3

    (S.D.N.Y. Sept. 17, 2015)................................................................................................. 17, 20

Brock v. Superior Care, Inc., 840 F.2d 1054, 1059-59 (2d Cir. 1988).................................... 9, 10

Bynog v. Cipriani Group, Inc., N.Y.3d 193, 198 (N.Y. 2003) ............................................... 13, 14

Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) .................................................... 14

Charles v. Cty. of Nassau, 116 F. Supp. 3d 107, 116-17 (E.D.N.Y. 2015) .................................... 9

Chen v. Oceanica Chinese Rest., Inc., 2016 U.S. Dist. LEXIS 46133, *25-26 (E.D.N.Y. Mar. 31,

    2016) ....................................................................................................................................... 24

Herman v. Blockbuster Entm't Grp. 18 F.Supp. 2d 304, 309 (S.D.N.Y. 1998) .......................... 22

Kew Sing Yap v. Mooncake Foods, Inc., 146 F. Supp. 3d 552, 557 n.4 (S.D.N.Y. 2015) ......... 20

Khereed v. W. 12th St. Rest. Grp., LLC, Case No. 15-cv-1363, 2016 WL 590233, *13 (S.D.N.Y.

    Feb. 11, 2016) ......................................................................................................................... 20

Lee v. ABC Carpet & Home, 186 F. Supp. 2d 447 (S.D.N.Y. 2002).......................................... 10

Lopez v. Acme Am. Envtl. Co., 2012 U.S. Dist. LEXIS 173290, *10-11

    (S.D.N.Y. Dec. 6, 2012)........................................................................................................... 23

Marte v Westbury Mini Mart, Inc., 2017 U.S. Dist. LEXIS 7721, *28 (E.D.N.Y. January 18,

    2017) ....................................................................................................................................... 18

New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006) .................................... 17

Teri v. Spinelli, 980 F. Supp. 2d 366 (E.D.N.Y. 2013) ............................................................... 14

Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d. Cir. 2003)....................................... 15, 16, 17

**Rules**

29 U.S.C. § 203(s)(1)(A) ............................................................................................ 3, 24

Fed. R. Civ. P. 56 ........................................................................................................ 9

Labor Law 195(1) ...................................................................................................... 14

Labor Law 195(3) ...................................................................................................... 14

Labor Law 198(1-b) ................................................................................................... 14

Defendant HER Holding, Inc. ("HER Holding") and Defendant EZJR, Inc. ("EZJR"),[1] by and through their undersigned attorneys, hereby submit this Memorandum of Law in opposition (the "HER Holding/EZJR Opposition") to the cross-motion for summary judgment by Plaintiff Lubleejoy Grant (the "Pl. MSJ"), and in reply to Ms. Grant's opposition (the "Pl. Opposition") to the motion by HER Holding and EZJR for summary judgment (the "HER Holding/EZJR MSJ"), and respectfully state as follows:

## PRELIMINARY STATEMENT[2]

The Court should deny the Pl. MSJ and overrule the Pl. Opposition because genuine issues of material fact exist as to Ms. Grant's status as an independent contractor or an employee of HER Imports LLC (the "LLC"), and because Ms. Grant has failed to show, as a matter of law, why HER Holding and EZJR owe her any payments under any theory of liability, at all, in each instance, as follows.

First, there are material fact issues in genuine dispute concerning the amount of control, if any, the companies had over Ms. Grant, the opportunity for profit and loss and investment in the business for Ms. Grant, the extent to which Ms. Grant exercised special skill, initiative, and independent judgment, and Ms. Grant's ability to engage in other employment, all of which are critical for the independent contractor analysis. With that said, however, there is no evidence whatsoever that EZJR or HER Holding ever interacted with Ms. Grant (indeed, HER Holding did not even exist until days before Ms. Grant resigned, and Ms. Grant admits that Mr. Terry hired

---

[1]       As set forth below, EZJR changed its name to Her Imports in or about January 12, 2017 (Defs' C-SMF ¶ 168). The defined term "EZJR" is nevertheless used in these papers for the sake of consistency and to avoid confusion.

[2]       Because the facts, arguments, and positions in the HER Holding/EZJR MSJ directly apply to the facts, arguments, and positions in the Pl. MSJ, HER Holding and EZJR hereby incorporate the HER Holding/EZJR MSJ into this HER Holding/EZJR Opposition in its entirety.

her and trained her, and set her compensation (Pl. MSJ at 2), and for that reason alone, the HER Holding/EZJR MSJ should be granted and the Pl. MSJ denied.

Second, Ms. Grant fails to show that EZJR was a joint employer of Ms. Grant because the Pl. MSJ mischaracterizes key facts and takes them out of context.  For instance, it does not squarely address the uncontested fact that after the October 1, 2014 Marketing and Selling Agreement (the "Agreement"): "Her shall staff each physical location with knowledgeable and competent employees to run each physical location."  (Defs' S-CMF ¶ 61.)  EZJR had nothing to do with staffing.  Nothing.  Therefore, EZJR was not a joint employer and the Court should grant the HER Holding/EZJR MSJ and deny the Pl. MSJ.

Third, Ms. Grant fails to establish that EZJR was a "substantial continuity" of the LLC because she cannot show any of the factors sufficient to prevail on summary judgment.  It is patently inconceivable that EZJR could have been notice of Ms. Grant's potential claim ***prior to*** October 1, 2014, as the test requires, because she continued working there for an additional five (5) or six (6) months, and because, as previously stated, EZJR was not in charge of staffing.  Apart from that, Ms. Grant has not established that the LLC cannot pay (after all, there is conflicting testimony that, on the one hand, the LLC ceased operations after the Agreement, yet it registered a trademark after the Agreement and amended the Agreement a year later).  From a business sense, there is also no substantial continuity because the business is different:  different products, additional retail locations, implementation of kiosks, different financing options offered by third party providers, "Hook Up" pay-over-time program, a forthcoming subscription membership program, and extensive revisions and improvements to the herimports.com website – all different from when the LLC was running the business.  Accordingly, EZJR is not a

"substantial continuity" of the LLC, and the Court should grant the HER Holding/EZJR MSJ and deny the Pl. MSJ.

Fourth, Ms. Grant has failed to show how EZJR, the LLC, and HER Holding were under common control sufficient to satisfy the test for a single integrated employer.  Indeed, these companies were separate and distinct, and were independent.  Accordingly, summary judgment in favor of HER Holding and EZJR is proper.

Fifth, Ms. Grant has failed to show that HER Holding and EZJR meet the $500,000 threshold contained in 29 U.S.C. § 203(s)(1)(A), which by itself defeats the Pl. MSJ.

Sixth, Ms. Grant's calculation of damages is inaccurate and misleading.  For instance, she fails to account for time she spent out of the physical location and had someone cover for her, and she misrepresents that she was not paid regular wages from September 2014 through December 2014, yet the evidence shows she received over $10,000.

Accordingly, the Court should deny the Pl. MSJ and grant the HER Holding/EZJR MSJ.

## STATEMENT OF ADDITIONAL FACTS[3]

Defendant HER Imports, LLC owned and operated all of the HER Imports stores in the U.S. while Ms. Grant was working at the LLC   (Defendants' Counter-Statement of Material Facts in Opposition to Cross-Motion ("Defs' C-SMF"), ¶ 100.)  David Cronister, an employee of the LLC at the time, was the national manager of all of the HER Imports retail locations in the U.S., and was responsible for all of the operational functions at the retail locations. (Defs' C-SMF ¶101.)  Cronister was also President of HER Holding.  (Id.)  HER Holding was distinct

---

[3]     The Statement of Facts from the HER Holding/EZJR MSJ is incorporated here in its entirety by reference. Additional facts are set forth in the Defs' S-CMF, submitted concurrently with this HER Holding/EZJR Opposition, and incorporated here in its entirety by reference.

from the LLC: HER Holding was created for the sole purpose of receiving royalties under the Agreement; at the time, the LLC owned the brand and the intellectual property.  (Id.)

EZJR paid royalties to HER Holding on all sales made at the HER Imports retail locations.  (Defs' C-SMF ¶110.)  At the time, all royalties received by HER Holding were reinvested in the LLC – in promotional activities, marketing, radio ads, and the payment of store-related expenses.  (Id.)  EZJR had no control over what HER Holding does with the royalties, and HER Holding had no obligation to report to EZJR how it spent the royalties.  (Defs' C-SMF, ¶111.) EZJR and the HER Imports entities did not have any common ownership.  (Defs' C-SMF, ¶112.)

EZJR's operations at the time consisted of providing marketing services and sales process management, primarily through its proprietary ecommerce platform and point of sale systems.  (Defs' C-SMF ¶113.)  EZJR offered these services to other companies besides the LLC.  (Id.)  The operations of the LLC, on the other hand, were focused on product development, sourcing, and sales in physical store locations.  (Defs' C-SMF ¶114.)  HER Holding's operations were limited to the receipt and distribution of royalties. (Defs' C-SMF ¶115.)

Barry Hall, the CEO of EZJR at the time, confirmed that EZJR and the LLC are "two separate companies.  We certainly coordinate activities like you would with any business partner, but I have no say in any decisions they may make, and they have no decisions – no say in any decision regarding EZJR."  (Defs' C-SMF ¶116.)

David Cronister made all of the hiring, firing and compensation decisions for the LLC, and while he kept EZJR apprised of his personnel decisions, EZJR did not have control over labor relations.  (Defs' C-SMF ¶118.)

At the time that the Agreement was executed, payroll functions were being handled by HER Imports LLC's bookkeeper, Georgette Elisha. (Defs' C-SMF ¶120.) Ms. Grant paid herself from the Brooklyn store's sales when she was first hired in 2013 and during 2014. (Defs' C-SMF ¶121.) Grant made notations that appear on the receipts to indicate amounts she had taken from the till. (Id.) The till receipts show that Ms. Grant paid herself on at least fourteen occasions between May 23, 2014 and October 24, 2014 (Id.) According to the till receipts, Ms. Grant paid herself from the store's cash proceeds until at least October 24, 2014, three weeks after the execution of the Agreement. (Defs' C-SMF ¶122.)

Ms. Elisha issued four paychecks to Ms. Grant from the account of HER Imports: dated October 23, 2014 for $960.00, November 21, 2014 for $535.85, December 5, 2014 for $612.50, and December 5, 2014 for $1,588.83. (Defs' C-SMF, ¶123.) Ms. Grant complained to Mr. Terry that she hadn't been paid since Ms. Elisha left HER Imports. (Defs' C-SMF, ¶124.) In her deposition, Ms. Grant claimed that she went unpaid for over six months. (Id.) Grant sent text messages and emails to Dave Cronister listing her missing paychecks; the first date on the list is December 19, 2014. (Defs' C-SMF ¶125.)

Mr. Terry testified that Ms. Grant insisted on being paid in cash. (Defs' C-SMF ¶126.) Ms. Elisha sent Ms. Grant several emails with personnel forms to complete in order to add her to the company's payroll system; the first was sent on February 1, 2014; the second on June 25, 2014; the last two were sent after the date of the Agreement on November 7, 2014, and December 9, 2014. (Defs' C-SMF ¶127.) There is no evidence in the record that Ms. Grant ever completed and returned the personnel forms. (Id.)

Ms. Grant "generated the system" for contacting stylists using "Yellow Pages, through StyleSeats on the internet, Instagram, social medias, personal knowledge of stylists." (Defs' C-

5

SMF, ¶131.) Ms. Grant kept all of the stylist contacts she created while at the Brooklyn store on her personal phone, and took this contact information with her when she stopped working for HER Imports.  (Id.)

Ms. Grant routinely paid out of her own pocket to buy people drinks when out in the evenings promoting HER Import products. (Defs' C-SMF ¶132.)  Grant claims that she had an arrangement with Mr. Terry to be reimbursed for these expenses.  (Id.)  According to David Cronister, Ms. Grant ran the Brooklyn store on her own, including setting her own hours.  (Defs' C-SMF, ¶134.)  Mr. Terry also testified that she set her own hours.  (Id.)

Ms. Grant did not provide any services to EZJR or HER Holding. (Defs' C-SMF, ¶135.) Grant's services were provided to the LLC alone to fulfill its obligations under ¶ 3 of the Agreement.  (Id.)  The LLC provided Grant with a cell phone; the Brooklyn store had a computer, but Grant used her own car, her own laptop, and her own iPad for work, and kept her store contacts on her personal phone.  (Defs' C-SMF ¶136.)

HER Holding was incorporated in Nevada on March 6, 2015. (Defs' C-SMF ¶137.)  Its Articles of Incorporation list Cronister as the President.  (Id.)  On or about March 7, 2015, HER Holding and HER Imports entered into an Assignment and Assumption Agreement where the LLC transferred all its rights and obligations under the Agreement to HER Holding. (Defs' C-SMF ¶138.)

While EZJR provided payroll functions for the HER Imports stores at the time, Mr. Hall testified that this was nothing more than "a minor favor" that was limited to entering the reported hours into the payroll system. (Defs' C-SMF ¶139.)  Mr. Hall confirmed that EZJR never directly paid Ms. Grant, with the exception of one wire transfer that Mr. Hall made from EZJR's account to an account in the name of Erica Hicks.  (Defs' C-SMF ¶140.)

No one at EZJR ever controlled or directed the terms of Ms. Grant's work at the LLC. (Defs' C-SMF ¶141.)  During her deposition, Ms. Grant admitted that she never met Mr. Hall, never spoke to Mr. Hall on the phone, never received a voicemail from him, and, as far as Ms. Grant could recall, received only one email from Mr. Hall.  (Id.)  Mr. Hall rarely visited the HER Imports locations and there is no evidence in the record that Hall ever visited the Brooklyn or Newark locations.  (Defs' C-SMF ¶142.)

Mr. Terry testified that Ms. Grant initially worked on a commission basis because he was looking to liquidate the inventory in the store, but then Ms. Grant then requested a change to being paid hourly.  Defs' C-SMF ¶146.)  Mr. Terry did not keep track of Ms. Grant's hours; Ms. Grant only reported her hours "[o]n a till receipt, she'll type in how much money she took out and how many hours she worked and her name, and that was it."  (Defs' C-SMF ¶147.) According to Mr. Terry, Ms. Grant was in and out of town on vacation and would pay relatives to watch the store in her absence.  (Id.)

Customers complained on social media that the store was not open during posted hours. (Defs' C-SMF, ¶148.)  Mr. Cronister testified that in terms of hours, Ms. Grant "kind of set her own hours and did her own thing."  (Defs' C-SMF, ¶149.)  Ms. Grant hired others to work in the store while she was out "[s]o it was different people that I had to relieve me, but they weren't hired by Patrick."  (Defs' C-SMF ¶150.)

On April 22, 2015, EZJR incorporated Her Marketing Concepts, Inc. ("Her Marketing") to purchase various media for customer and lead generation; Her Marking employs all EZJR employees.  (Defs' C-SMF ¶¶ 163, 167.)  On November 28, 2016, EZJR entered into an Asset Share Purchase & Business Agreement with Cabello Real Ltd., a private United Arab Emeritus company, to acquire the exclusive U.S. rights to the Her Imports trademark.  (Defs' C-SMF ¶

7

164.)  Also on November 28, 2016, EZJR terminated the Agreement and hired all the LLC's and Her Holding's employees and assumed all location leases.  (Defs' C-SMF ¶¶ 165, 166.)  On January 12, 2017, EZJR changed its name from EZJR, Inc. to Her Imports.  (Defs' C-SMF ¶ 168.)

Since canceling the October 1, 2014 Marketing and Selling Agreement (as amended) in November 2016, EZJR has opened approximately twelve (12) new retail locations to promote the Her Imports brand.  (Defs' C-SMF ¶ 171.)  Three of these locations are kiosks in shopping malls, which the LLC never had.  (Defs' C-SMF ¶ 171.)  HER Imports, LLC and HER Imports NY, LLC are and always were separate and distinct entities from EZJR.  (Defs' C-SMF ¶ 172.)  The LLC never used a Professional Employment Organization to administer its staff.  (Defs' C-SMF ¶ 173.)  The executive officers and directors of EZJR are Barry Hall (Executive Chairman of the Board of Directors and Chief Financial Officer), Denis Betsi (Director, Chief Technology Officer, and Secretary), and Juan Hernandez (Director).  (Defs' C-SMF ¶ 181.)  EZJR recently hired Tippi Shorter as Vice President, Product Development and Marketing.  (Defs' C-SMF ¶ 174.)  None of Barry Hall, Denis Betsi, Juan Hernandez, or Tippi Shorter is or ever was an employee, officer, director of, or otherwise in control of, the LLC.  (Defs' C-SMF ¶ 175.)

Since November 2016, EZJR has contracted with outside financing companies to provide different purchase options for EZJR's customers for the Her Imports product line.  (Defs' C-SMF ¶ 176.)  These outside companies include Affirm, getfinancing.com, and Zibby.  (Defs' C-SMF ¶ 176.)  The LLC never provided this type of purchase option to its customers.  (Defs' C-SMF ¶ 176.)  EZJR intends to introduce another buying program for its Her Imports customers, called the "Hook Up" plan, which allows customers to purchase products by making a 40%

deposit, then three additional payments of 20% each, as ACH draws.  (Defs' C-SMF ¶ 177.)  The LLC never did this.  (Defs' C-SMF ¶ 177.)

EZJR also intends to introduce a subscription membership program for its Her Imports customers.  (Defs' C-SMF ¶ 178.)  This program will be available at different levels with different monthly payment options, and then at select time intervals, subscribers will be able to redeem select bundled product packages.  (Defs' C-SMF ¶ 178.)  For example, subscribers at $50 per month will be entitled to one bundled product package, while subscribers at $75 per month will be entitled to a bundled product package with higher value, and so on.  (Defs' C-SMF ¶ 178.)  There is no evidence of the LLC ever doing this.

Under the Her Imports brand, EZJR sells vitamins, styling tools, thumb drives, and intends to introduce undergarments.  (Defs' C-SMF ¶ 179.)  The LLC never sold any of these products.  (Defs' C-SMF ¶ 179.)  EZJR has made extensive revisions and improvements to the herimports.com website.  (Defs' C-SMF ¶ 180.)

## ARGUMENT

Pursuant to Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In Charles v. Cty. of Nassau, the Eastern District explained that when evaluating a motion for summary judgment, "the role of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  116 F. Supp. 3d 107, 116-17 (E.D.N.Y. 2015).

## POINT I: THERE ARE GENUINE ISSUES OF MATERIAL FACT PREVENTING SUMMARY JUDGMENT THAT GRANT WAS AN EMPLOYEE, NOT AN INDEPENDENT CONTRACTOR

In Brock v. Superior Care, Inc., the Second Circuit identified the factors that make up the "economic reality" test courts use to distinguish between employees and independent contractors

under the FLSA: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." 840 F.2d 1054, 1058-59 (2d Cir. 1988).  See also Lee v. ABC Carpet & Home, 186 F. Supp. 2d 447 (S.D.N.Y. 2002) (when applying the second factor, courts should consider whether workers invested significantly more of their own money).  As a general matter, Mr. Cronister testified to Ms. Grant's status as an independent contractor during his deposition.  (Ex. K, 28:11-29:13.)[4] Specifically as to the elements, see below.

Issues of fact exist concerning whether HER Imports exercised control over Ms. Grant. Ms. Grant testified that she worked from 11:00 a.m. to 7:00 p.m. the entire time she was working for the LLC, that she frequently came into the store before 11:00 a.m., after 7:00 p.m., and on Sundays on instructions from Mr. Terry that "if they call and they need you to – you know, you have to access – go into the store."  (Defs' S-CMF ¶145.)  Mr. Terry testified that Ms. Grant initially worked on a commission basis because he was looking to liquidate the inventory in the store; after a time, Ms. Grant asked to be paid hourly, to which Mr. Terry agreed if Ms. Grant agreed to work as an independent contractor:  "Okay, fine, if you want to do like a contractor type scenario, you can operate the store, whatever hours you are in there, you bill for it and take the money out of the till, and just make sure it's noted in the POS, you can do it that way, and so she said that's how I want to do it."  (Defs' S-CMF ¶ 146.)  Terry further testified that:  (a) he did not keep track of Ms. Grant's hours; (b) Ms. Grant only reported her hours "[o]n a till

---

[4]      References to "Ex." in this HER Holding/EZJR Opposition are references to the declarations submitted in support of the HER Holding/EZJR MSJ and in opposition to the Pl. MSJ.  Exs. A-H are attached to the Barry Hall (First) Declaration, Exs. I-J are attached to the James J. DeCristofaro (First) Declaration, Exs. K-L are attached to the David Cronister declaration, Ex. M is attached to the Barry Hall (Second) Declaration, and Exs. N-P are attached to the James J. DeCristofaro (Second) Declaration.

receipt, she'll type in how much money she took out and how many hours she worked and her name, and that was it"; and (c) Ms. Grant was in and out of town on vacation and would pay relatives to watch the store in her absence. (Defs' S-CMF ¶ 147.)  Mr. Cronister and Mr. Reid also testified that customers had complained that the store was not open during posted hours. (Defs' S-CMF ¶ 148.)  Mr. Cronister also testified that in terms of hours, "She kind of set her own hours and did her own thing."  (Defs' S-CMF ¶ 149.)  Ms. Grant hired others to work in the store while she was out "[s]o it was different people that I had to relieve me, but they weren't hired by Patrick."  (Defs' S-CMF ¶ 150.)  Ms. Grant claimed that she was closely supervised by Mr. Terry, and in almost daily contact with him by phone.  (Defs' S-CMF ¶ 151.)  Yet Terry testified that he has over 3,000 people working for him, which would logically limit the amount of time Terry had available to supervise Grant. (Id., ¶ 152.)  Thus, there is a genuine factual dispute over whether Grant was closely supervised as an employee, or had the discretion to run the Brooklyn store as she saw fit, hiring temporary workers and varying the store's hours.

Ms. Grant claimed during her deposition that she corresponded with Mr. Terry daily and that she "didn't have the power to discount unless [Grant] spoke with [Terry]."  (Defs' S-CMF ¶ 151.)  However, when asked whom Ms. Grant reported to, Mr. Terry replied "Herself, essentially." (Id., ¶ 153.)  Mr. Cronister also testified that, even though he was national manager, he had little to do with the Brooklyn store because Grant "was supposed to build it, do her own thing with it, and so I didn't really deal with it much."  (Id.)

The Complaint also alleges that Mr. Reid controlled the terms and conditions of Grant's employment.  (Ex. I, 11.)  However, during his deposition Mr. Terry denied that Mr. Reid had any control over Grant.  (Defs' S-CMF ¶ 153.) Therefore, a genuine issue of fact exists concerning whether the LLC exercised control over Ms. Grant.

11

The second factor – the opportunity for profit and loss and level of investment in the business – weighs in favor of independent contractor status because Ms. Grant continued to spend her own money to promote the HER Imports brand even though Ms. Grant claims the LLC never reimbursed her:  Ms. Grant testified she routinely paid out of her own pocket to buy people drinks at the promotional events she attended.  (Defs' S-CMF ¶ 132.)  However, Ms. Grant never claimed that the lack of reimbursement caused her to stop investing her own funds in the promotional activities.  (Defs' S-CMF ¶ 154.)  In addition, Grant used her own car, her own laptop, and her own iPad for work. (Id., ¶ 156.)  Therefore, there is a genuine issue of fact whether Grant spent those funds on her own initiative to drive business to the store.

The third factor weighs in favor of independent contractor status because Ms. Grant exercised initiative and independent judgment continually.  Ms. Grant took initiative in several ways, including choosing some, although not all, of the locations where she would go to hand out business cards and engage in other promotional activities.  (Defs' S-CMF ¶ 157.)  Ms. Grant also testified that she "generated the system" to contact stylists using "Yellow Pages, through StyleSeats on the internet, Instagram, social medias, personal knowledge of stylists." (Defs' S-CMF ¶ 131.)  When asked if she still had the stylist contact information, Ms. Grant testified: "Absolutely.  It's not theirs; it's mine.  I initiated the contact."  (Defs' S-CMF ¶ 131.)  On one of these occasions, Grant testified that she introduced got D.J. Norie involved and paid him out of the till.  (Defs' S-CMF ¶ 133.)  Later, Grant testified that she also had to "do different things to promote with the stylists during the day."  (Defs' S-CMF ¶ 133.)  Also, as discussed above, Ms. Grant exercised independent judgment by hiring others to work in the store with her without input from Messrs. Terry, Reid, or Cronister.  (Id., ¶ 158.)

12

Ms. Grant also testified that she paid herself out of the till and recorded her hours by making notes of the dollar amount she was taking on the till receipts. (Defs' S-CMF ¶ 121.) Curiously, Ms. Grant does not claim to have taken store cash either to pay for her overtime hours or to reimburse herself for the purchases she purportedly made at promotional events; this creates an issue of fact as to whether Ms. Grant was exercising independent judgment in connection with managing the store cash of the LLC. These issues of fact preclude a finding as a matter of law that Grant was an employee and require denial of the Cross-Motion.

In Bynog v. Cipriani Group, Inc., the New York Court of Appeals set forth the test used to determine employment status under the NYLL. The Court stated:

> The parties agree that the critical inquiry in determining whether an
> employment relationship exists pertains to the degree of control exercised
> by the purported employer over the results produced or the means used to
> achieve the results. Factors relevant to assessing control include whether
> the worker (1) worked at his own convenience, (2) was free to engage in
> other employment, (3) received fringe benefits, (4) was on the employer's
> payroll and (5) was on a fixed schedule.

N.Y.3d 193, 198, 802 N.E.2d 1090, 770 N.Y.S.2d 692 (N.Y. 2003).

Here, considering the first and fifth factors together, issues of fact exist as to whether Ms. Grant worked at her own convenience or was on a fixed schedule. As discussed above, while Ms. Grant claims to have worked six days every week from 11:00 a.m. to 7:00 p.m. and three (3) to five (5) hours on each of Thursday, Friday, Saturday, and Sunday evenings, Mr. Terry's testimony undercuts this; instead, Mr. Terry testified that he did not track her hours, the store hours varied and were regularly changed to "by appointment only," and Ms. Grant went on vacation when she pleased. (Defs' S-CMF ¶ 145-148.) The third factor weighs in favor of independent contractor status because, apart from a cell phone (and she often used her personal phone), Ms. Grant did not receive any fringe benefits. (Defs' S-CMF ¶ 156.) Finally, an issue of fact exists as to whether Ms. Grant was free to engage in other employment. Ms. Grant claims

13

she signed a non-compete agreement but there is no other evidence in the record to show she was ever asked to sign a non-compete, and Ms. Grant has never produced a copy of the alleged agreement.  Instead, there are numerous emails from the LLC's accountant Elisha attaching the documents for Ms. Grant's signature, none of which contain a non-compete.  (Defs' S-CMF ¶ 159-160.) Therefore, issues of fact as to factors one, two, three, and five of the Bynog test preclude finding as a matter of law that Ms. Grant was an employee under the NYLL.[5]

## POINT II:  EZJR IS NOT A JOINT EMPLOYER

As stated with approval in the Pl. MSJ (at 8), in the formal control test, the court evaluates four factors to "determine the economic reality of a putative employment relationship," which are "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Teri v. Spinelli, 980 F. Supp. 2d 366 (E.D.N.Y. 2013); Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).[6]  In applying this standard here, Ms. Grant either misstates the facts in the record or ignores weight of the evidence that shows that HER Imports retained control over the store's operations, as follows.

First, Ms. Grant misstates the record when claiming that EZJR "primarily determined" which stores would open and which stores would close.  (Pl. MSJ at 8.)  In reality, it was a joint decision with Her Imports.  (Ex. B, 25:22-27:17; Ex. A: "Her agrees to provide physical sales

---

[5]     Because genuine issues of material fact exist as to Ms. Grant's status as an employee or independent contractor, application of Labor Law 195(1), 195(3), and 198(1-b) is premature and may, if Ms. Grant is an independent contractor, be entirely moot.

[6]     HER Holding and EZJR address the application of the joint employer tests in the HER Holding/EZJR MSJ (at 1-3, 13-21), which, as previously stated, is incorporated here by reference.

facilities in locations ***mutually agreed upon by the Parties***.")[7]  Regardless, who decided to open and close physical locations is irrelevant and has nothing to do with, as the test requires, the power to hire and fire employees.  Indeed, that power was explicitly retained by the LLC: "Her shall staff each physical location with knowledgeable and competent employees to run each physical location." (Ex. A, ¶ 3.2.)  Accordingly, EZJR was not a joint employer.

EZJR was also not a joint employer because EZJR never set her compensation, and never tasked Ms. Grant with any responsibilities.  (D. SMF ¶ 35.)  Also as stated in the HER Holding/EZJR MSJ (at 2), Ms. Grant admits she only had one conversation with Mr. Hall, ever, after claiming first that she had never met him, never had any phone calls with Mr. Hall, ever, never received a voicemail from Mr. Hall, ever, and only received one email message from Mr. Hall, and that email was limited to Mr. Hall asking Ms. Grant for copies of real property leases for Brooklyn and New Jersey.  (D. SMF ¶ 37.); she also admits that she never visited EZJR in Las Vegas, Nevada (D. SMF ¶ 36), where EZJR's principal executive offices are located (D. SMF ¶ 3).  There is no evidence in the record to charge EZJR with the obligation to maintain payroll records.  To the contrary, EZJR's responsibilities are clearly delineated in the Agreement and do not include maintaining personnel records of any kind.  (Defs' C-SMF ¶ 76.) Accordingly, EZJR was not a joint employer.

Grant also claims that EZJR is liable under the six-factor functional control test established by the Second Circuit in Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d. Cir. 2003).[8]  While these factors are addressed in detail in the HER Holding/EZJR MSJ at 14-21, and

---

[7]      Pl. C-SMF ¶ 68 is misleading.  It stops at 25:21, but the deposition testimony continues through 27:17 to clarify that statement.

[8]      The six Zheng factors are: (1) whether the purported joint employer's premises and equipment were used for the purported employee's work; (2) whether the purported immediate employer had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which the purported employee performed a discrete line job that was integral to the purported joint employer's process of production; (4) whether

15

are incorporated here by reference, the Pl. MSJ raises additional points, which are addressed as follows.

1. "EZJR was responsible for paying all rents and purchasing all inventory for HER Imports stores located in the United States. (Pl. C-SMF, ¶¶ 64, 73)." (Pl. MSJ at 8.) While this is factually correct, this does not change the fact that HER Imports operated the physical locations (Defs' C-SMF ¶ 100), and that, as previously stated, staffing was the responsibility of HER Imports:  "Her shall staff each physical location with knowledgeable and competent employees to run each physical location." (Ex. A, ¶ 3.2.)

2. "Ms. Grant's duties remained unchanged and her performance remained integral to the business. (Pl. C-SMF, ¶¶ 50-54)."  (Pl. MSJ at 8.)  Grant does not show how her performance remained integral to the business of EZJR, i.e., the purported employer, as she must (Zheng, 355 F.3d at 72), and instead, makes a self serving conclusory statement without describing the "business," or EZJR's "process of production," or explain how she was purportedly integral to it.

3. "EZJR assumed responsibility for the employees of the HER Imports stores in the United States and payment of their compensation.  (Pl. C-SMF, ¶¶ 60-61)."  (Pl. MSJ at 8-9.)  The deposition testimony of Mr. Terry cited here by Ms. Grant completely contradicts the Agreement:    "Her shall staff each physical location with knowledgeable and competent employees to run each physical location." (Ex. A, ¶ 3.2.)  It also contradicts the deposition testimony of Mr. Cronister.  (Ex. K, 11:6-23; 12:24-13:14; 14:6-9; 15:17-19; 17:14-19:20; 22:16-23; 27:9-28:7; 31:6-10; 32:9-22; 32:23-33:6; 35:21-36:5; 40:14-18.)  It also contradicts other testimony by Mr. Terry (whose testimony is the sole basis for the statements made in Pl. C-SMF, ¶¶ 60-61); specifically, "Q.  So all of the stores become a problem of HER Holdings and EZJR after the contract, correct?  A. ***The stores became the problem of HER Holdings, not EZJR***.  You have asked me that question four times."  (Defs' C-SMF ¶182.)   Thus, at best, a genuine issue of material fact exists.

4. "Because EZJR essentially owned the HER Imports stores in the United States and HER Imports Companies ceased to operate, Ms. Grant's work was exclusively for EZJR. (Pl. C-SMF ¶¶ 59, 63)."  (Pl. MSJ at 9.)  This has no factual basis.  The record shows that the LLC, as required by the Agreement, continued to be responsible for all store operations.  (Defs' S-CMF ¶100.)  It also shows that the LLC registered a trademark one month after the Agreement, and executed an amendment to the Agreement a year after the Agreement.  (Defs' S-CMF ¶109.)  And the LLC had to exist after the Agreement in order to collect royalties – HER Holding did not come

---

responsibility under the contracts could pass from one immediate employer to another without material changes; (5) the degree to which the purported joint employer or its agents supervised the purported employee's work; and (6) whether the purported employee worked exclusively or predominantly for the purported joint employer.  Id.

into existence, and therefore couldn't collect royalties, until March 6, 2015, five months after the Agreement was executed.   (Defs' S-CMF ¶137.)

5. "Moreover, all revenue generated by HER Imports stores in the United States is remitted to EZJR, which demonstrates that Ms. Grant's work was primarily for EZJR's benefit. (Pl. C-SMF ¶ 70)."  (Pl. MSJ at 9.)  While all of the store revenues under the Agreement are paid to EZJR first, the LLC, through HER Holding, receives a substantial benefit from the royalties that EZJR pays.  (Defs' C-SMF ¶110).  David Cronister testified that the royalties go right back into the business *for the benefit of the HER Imports stores* – for sales promotions, operational expenses, and to pay his salary and expenses.  (Id.)

As the above shows, the facts asserted by Ms. Grant do not support a finding under the Zheng test that EZJR had functional control over the LLC and therefore, the Pl. MSJ should be denied.

### POINT III: EZJR IS NOT A "SUBSTANTIAL CONTINUITY" OF THE LLC

"Under New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities."  New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006).

Grant now asserts for the first time in the Pl. MSJ that EZJR is a successor to HER Imports on the basis of the "substantial continuity" theory of successor liability.  The 2d. Circuit has yet to determine whether the substantial continuity exception is available to assert liability against a successor here.  See Bautista v. Beyond Thai Kitchen, Inc., No. 14 Civ. 4335 (LGS), 2015 WL 5459737, *3 (S.D.N.Y. Sept. 17, 2015).

However, after acknowledging that "[t]he law is unclear whether the substantial continuity test is to be decided ultimately by the Court or by the finder of fact," the Bautista Court set forth the "substantial continuity" test for successor liability as follows:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) continuity of business operations; (4) whether the new employer uses the same plant; (5) whether the new employer uses the same or substantially the same work force; (6)

17

> whether the same jobs exist under substantially the same working conditions; (7) whether he uses the same or substantially the same supervisory personnel; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

Id. at *5-6 (internal citations and quotations omitted).  Grant bears the burden of proof for the successor liability exception to apply.  Id.  "Although no one factor is determinative, courts have recognized that the first two factors, viz. notice of the claim prior to acquisition and the ability of the predecessor to provide relief, is critical."  Marte v Westbury Mini Mart, Inc., 2017 U.S. Dist. LEXIS 7721, *28 (E.D.N.Y. January 18, 2017) (citations and quotations omitted).

Even if EZJR were considered a successor entity for these purposes, it does not meet the "substantial continuity" test, as follows.  First, there is no possible way on this record that EZJR could have had notice of Ms. Grant's purported claim "prior to" acquiring the inventory – as required by the substantial continuity test – because Ms. Grant was classified as an independent contractor (Defs' C-SMF ¶ 161), she was still an independent contractor at HER Imports at the time the Agreement was entered into (October 1, 2014) (Defs' SMF ¶ 12), and was an independent contractor for approximately five (5) months thereafter until she purportedly resigned in March 2015 (Pl. C-SMF ¶ 54), and Ms. Grant has failed to show any evidence that EZJR was aware that Ms. Grant allegedly had not been paid, allegedly worked overtime and allegedly did not get paid for it, i.e., had a potential claim – again, before, as required by the test, October 1, 2014.  Nor has Ms. Grant pointed to any evidence of formal or informal complaints about her compensation that would put EZJR on notice.   Apart from that, why would EZJR even consider staffing issues at that time, since, again, staffing was the responsibility of the LLC: "Her shall staff each physical location with knowledgeable and competent employees to run each physical location."   (Ex. A, ¶ 3.2.)   Also, at the time the Agreement was executed, payroll functions were being handled by HER Imports LLC's bookkeeper, Georgette Elisha.  (Defs' S-

CMF ¶120.)  There was therefore no reason for EZJR to be on notice (constructive or otherwise), before it entered into the Agreement to purchase the inventory, that Ms. Grant purportedly had the claims she is asserting in this lawsuit, which was not even filed until September 1, 2015, almost one year after the Agreement was signed.

Second, there is at least a question of fact as to the continued existence of the LLC and its ability to pay.  For instance, Amendment 3 to the Agreement, signed and dated October 13, 2015, more than one year after the Agreement (after which, according to Mr. Terry, the LLC purportedly ceased to operate (Pl. C-SMF ¶ 63)), explicitly states that HER Imports ***maintains an exclusive worldwide license*** to the "Her Imports" trademark (Registration No. 4,631,694) – a trademark HER Imports ***acquired over a month after*** HER Imports signed the Agreement with EZJR.  (Defs' S-CMF ¶109.)  Jerome Reid signed Amendment 3 on behalf of Her Imports LLC. If the LLC really ceased to operate after October 1, 2014, as Terry testified, what is it doing purportedly registering a trademark one month later,[9] and entering into an amendment to the Agreement more than a year later?  At the very least, this creates a genuine issue of material fact and therefore, the Pl. MSJ should be denied.

As to the remaining factors, a reasonable jury could also find in favor of EZJR, thus creating a genuine issue of material fact, because it has changed the way the business works.  For example, since canceling the Agreement in November 2016, EZJR has opened approximately twelve (12) new retail locations; three of these locations are kiosks in shopping malls, which the LLC never had.  (Defs' C-SMF ¶ 171.)  In addition, on April 22, 2015, EZJR incorporated Her Marketing, which purchases various media for customer and lead generation, and since November 28, 2016, employs all EZJR employees using a Professional Employment

---

[9]    According to the U.S. Patent and Trademark office website, the registrant for trademark bearing Registration No. 4,631,694 is Jerome Anthony Reid.

Organization otherwise known as a PEO.  (Defs' C-SMF ¶¶ 163, 167.)  There is no evidence that the LLC used a PEO.  In addition, EZJR now:  (a) sells a more varied product line (as EZJR now sells vitamins, styling tools, thumb drives, and soon undergarments) (Defs' C-SMF ¶ 179); (b) offers financing options through third party providers (Defs' C-SMF ¶ 176); (c) offers a new "Hook Up" lay away program that allows customers to pay over time, interest free (Defs' C-SMF ¶ 177); (d) is soon to offer a subscription service (Defs' C-SMF ¶ 178); (e) has made extensive improvements to the herimports.com website (Defs' C-SMF ¶ 180); and (f) has an entirely different executive team (Defs' C-SMF ¶¶ 169, 170, 174, 175, 181).

The last two <u>Bautista</u> factors (eighth factor – taking control of existing equipment and process; ninth factor – production of the same product) do not apply here because EZJR did not and does not manufacture its own products, and Grant did not even address these factors in her summary judgment brief.

Since Ms. Grant cannot meet the first factor and genuine issues of material fact exist for the remaining applicable factors, the Pl. MSJ should be denied.

## POINT IV:  GRANT CANNOT ESTABLISH THAT THE SINGLE INTERGRATED ENTERPRISE EXCEPTION SHOULD APPLY TO HER HOLDING AND EZJR

Grant cannot establish that EZJR and HER Holding are liable to Grant on the basis that EZJR, HER Holding, and the LLC are a single integrated enterprise.  The Second Circuit has yet to endorse the single integrated enterprise theory in a wage and hour violations case.  <u>Khereed v. W. 12th St. Rest. Grp., LLC</u>, Case No. 15-cv-1363, 2016 WL 590233, *13 (S.D.N.Y. Feb. 11, 2016).  While some courts in the Second Circuit have chosen to apply the single integrated enterprise theory to wage and hour cases, others have declined to do so.  <u>See</u> <u>Kew Sing Yap v. Mooncake Foods, Inc.</u>, 146 F. Supp. 3d 552, 557 n.4 (S.D.N.Y. 2015) (comparing treatment of single enterprise theory in FLSA cases in the Southern District of New York).

20

In her brief, MS. Grant lists a bunch of factual assertions but does not explain how they fit together into a single integrated enterprise theory.  (Pl. MSJ at 13-14.)  Several of those assertions, however, are factually incorrect.   For example, Ms. Grant asserts that "EZJR purchased all the inventory of the HER Imports Companies and assumed responsibility for purchasing future inventory, employees and compensation, business operations, and marketing." Id.  As discussed above, EZJR had no responsibility for employees, compensation, or business operations.  (Defendants' C-SMF, ¶¶ 62-63, 100-119.)   Ms. Grant also asserts that "HER Holding is simply a shell corporation for EZJR to use its funds to promote the Her Imports stores to increase EZJR's revenue."   How the royalties HER Holding receives from EZJR are used is the sole discretion of David Cronister, the LLC's national manager at the time.  EZJR had no control over what HER Holding did with the royalties.  (Defs' S-CMF ¶111.)

Plaintiff uses the four-part single integrated enterprise test adopted by the Second Circuit in <u>Cook v. Arrowsmith Shelburne, Inc.</u>, a Title VII wrongful termination case, to argue that EZJR, HER Holding, and the LLC should be treated as a single integrated enterprise: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control.  69 F.3d 1235, 1240 (2d Cir. 1995).[10]  As to the first factor (interrelations of operations), Ms. Grant asserts that "HER Holding's purpose is to collect royalties in place of HER Imports Companies' place (sic) and use those funds to promote the Her  Imports stores, which in turn produces more revenue for EZJR."  (Pl. MSJ at 14.)  While this assertion may be factually accurate, it does not address EZJR's operations at the time or explain how they were allegedly interrelated with that of the LLC and HER Holdings.  EZJR's operations at the time consisted of providing marketing services and sales process management,

---

[10]     HER Holding and EZJR address the application of the single integrated enterprise factors in the HER Holding/EZJR MSJ (at 3, 12-13, 21-25), which, as previously stated, is incorporated here by reference.

primarily through its proprietary ecommerce platform and point of sale systems.  (Defs' C-SMF ¶ 113.)  The operations of the LLC, on the other hand, were focused on product development, sourcing, and sales in physical store locations.  (Id. ¶ 114.)  HER Holding's operations were limited to the receipt and distribution of royalties. (Id. ¶ 115.)  While these operations necessarily connect to complete the provision of complimentary services, they were by no means "interrelated" within the meaning of the single integrated enterprise test.

For the second factor (centralized control of labor relations), Ms. Grant asserts that "Mr. Cronister, President of HER Holding and General Manager of the HER Imports Companies, and Mr. Hall have control and authority over employee relations, compensation, hiring and firing." (Pl. MSJ at 14.)  There is no evidence in the record that EZJR has any control over employee relations; to the contrary, Mr. Cronister made all of the hiring, firing and compensation decisions for the LLC at the time, and while he kept EZJR apprised of his personnel decisions, EZJR did not have control over labor relations.  (Defs' S-CMF ¶118.)  The fact that EZJR supplied payroll and other services to the LLC under the Agreement is not a basis to rule that EZJR and the LLC have centralized control over labor relations because, instead of sharing those services, the LLC paid EZJR for them. (Id., ¶116.)  See Herman v. Blockbuster Entm't Grp. 18 F.Supp. 2d 304, 309 (S.D.N.Y. 1998).

For the third factor (common management), Ms. Grant asserts only that it is established "for the same reasons articulated above concerning centralized control of labor relations." (Pl. MSJ at 14.).  There is no evidence of common management.  Mr. Hall confirms that EZJR and Her Imports LLC were "two separate companies.  We certainly coordinate activities like you would with any business partner, but I have no say in any decisions they may make, and they have no decisions – no say in any decision regarding EZJR."  (Defs' S-CMF ¶116.)  There is

nothing else in the record to suggest that Messrs. Cronister, Terry, Reid or any other manager of the LLC had any involvement in managing EZJR's operations at the time, or that Mr. Hall or anyone else at EZJR managed operations at HER Holding or the LLC at the time.  (Id., ¶ 111-119.)  The Agreement undercuts any such claim by defining the obligations of EZJR and the LLC to one another as an arm's length agreement.  (Ex. A, ¶ 1.1.)

For the final factor (common financial control), Grant asserts that "EZJR receives and controls all the revenue produced by the Her Imports stores and pays all expenses"; and "Her Holding's only source of revenue is royalties paid by EZJR, which it uses to promote sales of Her Imports products to generate more revenue for EZJR."  (Pl. MSJ at 15.)  These facts do not establish that EZJR has financial control over the LLC because, for instance, Mr. Cronister testified that he alone decides how the royalties received are to be spent.  (Defs' C-SMF ¶ 111.)  And there is no evidence that the LLC, HER Holding, or any of the individuals associated with the LLC have any say in EZJR's finances.  Therefore, Ms. Grant failed to establish that any of the factors supporting application of the single integrated enterprise theory to extend liability to EZJR or HER Holding.  Even if Ms. Grant had sufficient proof to show that these three entities amounted to a single integrated enterprise, the theory should not be applied in this case where there is no evidence that either EZJR or HER Holding exerted any control over Ms. Grant herself.  Lopez v. Acme Am. Envtl. Co., 2012 U.S. Dist. LEXIS 173290, *10-11 (S.D.N.Y. Dec. 6, 2012) (control is paramount).   Here, Ms. Grant has not shown any element of control by EZJR or HER Holding over her during her tenure at the LLC (which would be impossible for HER Holding, which did not even exist at the time).  Therefore, there is no basis for extending the single integrated enterprise theory to this case and the Pl. MSJ should be denied.

**POINT V:  MS. GRANT'S FLSA CLAIM MUST FAIL BECAUSE SHE HAS NOT
SHOWN THAT HER HOLDING AND EZJR MEET THE SALES VOLUME
THRESHOLD**

Even if Ms. Grant could establish that she was an employee, her motion for summary judgment should also be denied as to her FLSA claims because she has failed to establish that any of the defendants are actually subject to the statute's requirements.  FLSA is not applicable to all employers.  For instance, under 29 U.S.C. § 203(s)(1)(A), on a motion for summary judgment, Ms. Grant has the burden of proving, among other things, that for each of HER Holding and EZJR "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  See Chen v. Oceanica Chinese Rest., Inc., 2016 U.S. Dist. LEXIS 46133, *25-26 (E.D.N.Y. Mar. 31, 2016). On a motion for summary judgment, if no evidence is presented that this threshold has been met, courts rule in favor of defendants.  Id; Alladin v. Paramount Mgmt., LLC, 2013 WL 4526002, *5 (S.D.N.Y. Aug. 27, 2013).  Ms. Grant has presented no such evidence.

**DAMAGES**

Ms. Grant is not entitled to summary judgment on her purported damages because there are genuine issues of material fact as to the number of hours Ms. Grant actually worked and the amount she is purportedly owed, as follows.  First, Ms. Grant's own testimony contradicts the calculations in the Pl. MSJ on this point:  on the one hand, she claims to have worked forty-eight (48) hours per week in the stores plus twenty (20) hours per week in the field (Pl. MSJ at 18-21), yet she testified at deposition that she had people cover for her when she was not at the physical location (Defs' C-SMF ¶ 162); but, she does not account for the time she actually was not working when calculating purported regular wages, nor does the calculation of her purported overtime (Pl. MSJ at 18-21).  Second, Ms. Grant claims to have not been paid any amounts in September, October, November, and December 2014 (Pl. MSJ at 20-21), yet the evidence shows

24

that during that period, she received at least $6,720 in cash payments from the till (Defs' C-SMF ¶ 121), plus $3,697.18 in checks (Defs' C-SMF ¶ 123), for a total of $10,417.18.  Accordingly, genuine issues of material fact exist and the Court should therefore deny the Pl. MSJ.

Liquidated damages are not appropriate because the evidence shows that there was a reasonable good faith belief that Ms. Grant was an independent contractor and not an employee. (Defs' C-SMF ¶¶ 158, 160, 161.)  Liquidated damages are also not appropriate because Ms. Grant misrepresented that she was not paid regular wages for September – December 2014 (Pl. MSJ at 21), yet the record shows that received a total of at least $10,417.18 during that time (Defs' C-SMF ¶¶ 121, 123).  She also never completed the payroll package for the LLC, despite repeated requests, to get her into the payroll system (Defs' C-SMF ¶ 160) and therefore, it would be inequitable to reward Ms. Grant with liquidated damages, for her own non-compliance.

## CONCLUSION

In light of the foregoing, the Court should deny Grant's motion in its entirety, and award all such other and further relief the Court deems just and proper.[11]

Dated:   New York, New York
         May 4, 2017

/s/ James J. DeCristofaro, Esq.
James J. DeCristofaro, Esq.
DCL Firm (DeCristofaro Law)
260 W 26th Street, Suite 7Q
New York, New York 10001
Tel.  (212) 500-1891
Fax (917) 591-0289
Email:  james@dclfirm.com

*Attorneys for Defendants HER Holding, Inc. and EZJR, Inc.*

---

[11]     There is similarly no evidence of a "joint" or "integrated" relationship between HER Imports NY, LLC and EZJR (or HER Holding), and the HER Holding/EZJR MSJ should be granted on that basis as well.